IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE COMPLAINT OF ROBERT S. PENNYPACKER AS OWNER OF THE 1993 SILVERTON 37' MOTORYACHT (HIN: STST0003G293) FOR EXONERATION FROM LIMITATION OF LIABILITY

Civil No. JFM-16-1317

******

## MEMORANDUM

Pursuant to the Exoneration and Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, Robert S. Pennypacker filed a complaint for exoneration or limitation of liability from claims arising from a fire that occurred on his yacht. (ECF No. 1). Several entities subsequently filed tort claims against him. Pending are claimant Roger's Marine Service, LLC's ("Roger's Marine") motion to dismiss for lack of maritime jurisdiction (ECF No. 9), Pennypacker's motion for default judgment (ECF No. 22), a motion to intervene by National Liability and Fire Insurance Company ("National Liability") (ECF No. 26), and Pennypacker's motion to amend or correct his Limitation Act complaint. (ECF No. 39). The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, Roger's Marine's motion to dismiss and National Liability's motion to intervene are granted, and Pennypacker's motions for default judgment and to amend or correct his Limitation Act complaint are denied as moot.

## BACKGROUND

This case arises from a fire on Pennypacker's 1993 Silverton 37' Motoryacht, *Burned Out Again*, at Bowley's Marina ("Bowley's") in Baltimore. (ECF No. 1 ¶¶ 2, 5). Pennypacker

had owned the yacht since 2011. (*Id.* ¶ 11). Every year during the boating season, he would keep the yacht in a wet slip at Bowley's; at the end of the season, he would engage Roger's Marine to shrink-wrap the vessel for protection from the elements while it was withdrawn from the water for the winter. (*Id.*) At the time the fire occurred on November 9, 2015, *Burned Out Again* had been removed from its wet slip for the off-season. (*Id.* ¶ 10).

Accordingly, on the day of the fire, the yacht was resting on stands in the dry wharfage area of Bowley's Marina. Roger's Marine employees installed plastic shrink wrap over the yacht, a technique which involved using a heat gun with an open flame. (*Id.* ¶ 12). The workers left sometime around 4:15 p.m. to 4:30 p.m., after it began to rain. (*Id.* ¶ 12). About an hour later, marina employees discovered the fire, but by the time the firefighters arrived, it had spread to nearby boats in the dry wharfage area and to a nearby marina building. (*Id.* ¶ 9). As a result of the fire, Pennypacker's yacht was rendered a constructive total loss, and had no remaining salvage or other value. (*Id.* ¶ 8). Nearby boats and the marina building also sustained damages. A subsequent investigation determined that the fire had begun after the torches used by Roger's Marine workers ignited flammable material on the yacht, which smoldered undetected before breaking out into a fire. (*Id.* ¶ 13).

On May 3, 2016, Pennypacker filed a petition in this court for exoneration from or limitation of liability from claims arising from the fire. (ECF No. 1). Pursuant to a court order, notice of the petition was published four times, and potential claimants were sent copies of the notice giving them until June 22, 2016 to file their respective claims and answers. (ECF No. 22, pp. 1-2). Claims were timely filed by Roger's Marine, for indemnity and contribution if it is found at fault for starting the fire (ECF No. 11); by Bowley's Marina and Bowley's Marina to the use and benefit of ACE American Insurance Company ("Bowley's"), for damages to the

marina building and grounds (ECF No. 10); and by Foremost Insurance Company as Subrogee of Michael Horne ("Foremost"), for damages to his boat from the fire. (ECF No. 12). At the time it submitted its claim, Roger's Marine also filed a motion to dismiss for lack of subject matter jurisdiction. (ECF No. 9). Two weeks after the deadline for filing claims against him had passed, Pennypacker filed a motion to hold all parties who failed to file timely claims in default. (ECF No. 22). National Liability, a subrogated insurance company that paid for damages to two boats also damaged by the fire, filed a motion to intervene a week and a half later. (ECF No. 26). Both Bowley's and Foremost subsequently filed cross-claims against Roger's Marine for negligence. (ECF Nos. 31, 32). Finally, Pennypacker filed contract and tort counterclaims against Roger's Marine (ECF No. 35), and a motion to amend or correct his Limitation Act complaint. (ECF No. 39).

**STANDARD**

As the party asserting jurisdiction, Pennypacker carries the burden of proving that subject matter jurisdiction exists. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Because the motion to dismiss is brought under Rule 12(b)(1), the district court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

## ANALYSIS

The central dispute on this motion to dismiss is whether admiralty jurisdiction exists in this case, and if so, over what claims. The issue is of particular significance because Pennypacker seeks, among other things, exoneration or limitation of liability under the Exoneration and Limitation of Liability Act (the "Limitation Act"), 46 U.S.C § 30501 *et seq.*—protection that is available only if the tort claims he seeks to limit fall under the court's admiralty jurisdiction.

The Limitation Act provides that a shipowner's liability for certain claims is limited to the value of the boat and its pending freight, so long as the facts giving rise to such claims occurred "without the privity or knowledge of such owner." 46 U.S.C. § 30505(a)-(b). Congress enacted the statute in 1851 with the intention of "induc[ing] the heavy financial commitments the shipping industry requires by mitigating the threat of a multitude of suits and the hazards of vast, unlimited liability as the result of a maritime disaster." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999) (citing *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 414 (1954)) (internal quotation marks omitted)).

Although the Limitation Act thus provides a federal cause of action for a shipowner seeking exoneration or limitation of liability, the statute is not an independent source of jurisdiction. Rather, "[the Act] is a procedure that may be invoked when general admiralty and maritime jurisdiction has been established."[1] *David Wright Charter Serv. of N. Carolina, Inc. v. Wright*, 925 F.2d 783, 783 (4th Cir. 1991). In other words, a district court will have jurisdiction to hear a petition brought under the Limitation Act only if the court already has admiralty jurisdiction over the underlying claims that the petition seeks to limit. Admiralty jurisdiction

[1] Under 28 U.S.C. § 1333, of course, district courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." *See* U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to . . . all Cases of admiralty and maritime Jurisdiction.").

over actions brought under Limitation Act may be based on either a maritime tort or a maritime contract. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (a tort can provide the basis for an action under the Limitation Act, provided that the alleged tort satisfies "conditions both of location and of connection with maritime activity"); *David Wright*, 925 F.2d at 784–85 (a contract can also provide the basis for an action under the Limitation Act, so long as it is a maritime contract).

Pennypacker does not dispute that the torts alleged against him fail to meet the location and maritime activity requirements so as to trigger admiralty jurisdiction under 28 U.S.C. § 1333. (*See* ECF Nos. 25, 41). Instead, Pennypacker asserts that his contract with Roger's Marine provides the jurisdictional hook for his Limitation Act petition. (ECF No. 25, pp. 3-7). As to the tort claims alleged against him, Pennypacker contends that they arise from the same set of facts and therefore fall within the court's supplemental jurisdiction. (ECF No. 25, p. 7) (citing 28 U.S.C. § 1367). Roger's Marine, for its part, argues that the contract is not a maritime contract subject to admiralty jurisdiction, and that even if it were, Pennypacker cannot seek the protection of the Limitation Act because the torts he seeks to limit do not fall under the court's admiralty jurisdiction. (ECF No. 28, pp. 1-2).

For the reasons that follow, the contract between Pennypacker and Roger's Marine is subject to admiralty jurisdiction, and the court can therefore exercise supplemental jurisdiction over the torts claims arising from the same set of facts. But because admiralty jurisdiction does not extend to any of the tort claims against which Pennypacker seeks limitation or exoneration, his Limitation Act petition must be dismissed.

**A. The Pennypacker-Roger's Marine Contract Falls Within the Court's Admiralty Jurisdiction.**

First, the agreement to shrink-wrap Pennypacker's yacht is a maritime contract subject to admiralty jurisdiction. It is well-settled that contracts to repair boats are maritime contracts. *See, e.g.*, *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96 (1922); *David Wright*, 925 F.2d 783. It is also widely accepted that a contract to store a boat for the winter season is a maritime contract—even in the absence of a repair provision, and regardless of whether the boat is kept on land or in water. *See, e.g., Am. E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123 (5th Cir. 1979); *Medema v. Gombo's Marina Corp.*, 97 F.R.D. 14 (N.D. Ill. 1982); *Schuster v. Baltimore Boat Sales, Inc.*, 471 F. Supp. 321 (D. Md. 1979).

If repair contracts and seasonal storage contracts are subject to admiralty jurisdiction, a contract to shrink-wrap a boat for winterization purposes must surely fall within the same category. Like a repair or storage contract, a contract for the winterization of a boat "does not reflect an intent to take the vessel out of navigation in any permanent sense." *Omaha Indem. Co. v. Whaleneck Harbor Marina, Inc.*, 610 F. Supp. 154, 156 (E.D.N.Y. 1985). To the contrary, its very purpose "is to preserve the vessel for future use in navigation." *Id.* This is so because winterization impacts a boat's utility in navigable water: "[p]rotecting a vessel from harsh winter elements preserves that vessel's seaworthiness as much or more as the painting, washing, or other minor repairs which are often the subject of repair clauses in storage contracts." *Medema*, 97 F.R.D. at 16. For these reasons, the contract to shrink-wrap Pennypacker's yacht manifestly "relates to a vessel in its use as such," and it is therefore a maritime contract subject to admiralty jurisdiction. *Mahony v. Lowcountry Boatworks, LLC*, 465 F. Supp. 2d 547, 550 (D.S.C. 2006) (internal quotation marks and citation omitted).

**B. Admiralty Jurisdiction Does Not Extend to Any of the Alleged Tort Claims.**

Although the shrink-wrapping contract is within the court's admiralty jurisdiction, such jurisdiction does not also extend to the tort claims in this case. The parties assert various tort claims and counterclaims related to the fire on Pennypacker's yacht, but these alleged torts occurred on land, so they are not subject to admiralty jurisdiction. *David Wright*, 925 F.2d at 785 (affirming dismissal of Limitation Act complaint because the fire on the boat occurred while it was in a shed 75 feet from the water); *see also Omaha Indem. Co.*, 610 F. Supp. at 156 (no admiralty jurisdiction over tort claims where vessel in dry storage was damaged). Because the tort claims arise out of the same set of facts as Pennypacker's contract claims within the court's admiralty jurisdiction, however, the court *does* have supplemental jurisdiction over them, as both parties agree. *See Mahony*, 465 F. Supp. 2d at 554 (exercising ancillary jurisdiction over tort claim arising out of the same nucleus of operative facts as contract claim); *Ziegler v. Rieff*, 637 F. Supp. 675, 677 (S.D.N.Y. 1986) (same); *Complaint of Lady Jane, Inc.*, 818 F. Supp. 1470, 1474 (M.D. Fla. 1992) (same).

Pennypacker acknowledges that the pending tort claims are subject to supplemental jurisdiction (ECF No. 25, pp. 7-9), but fails to recognize the necessary upshot: because the tort claims Pennypacker seeks to limit are not subject to admiralty jurisdiction, the Limitation Act cannot provide the refuge he seeks. As discussed above, it is axiomatic that the court's jurisdiction under the Act "is coextensive with its admiralty jurisdiction." *LeBlanc v. Cleveland*, 979 F. Supp. 142, 146 (N.D.N.Y. 1997), *aff'd*, 198 F.3d 353 (2d Cir. 1999). Therefore, because the court lacks admiralty jurisdiction over the tort claims Pennypacker seeks to limit, the court does not have jurisdiction to adjudicate Pennypacker's Limitation Act petition.

For all of these reasons, the court has supplemental jurisdiction over the tort claims Pennypacker seeks to limit, but his petition for exoneration from or limitation of liability must be dismissed. Because it would make no difference to this court's determination that it lacks jurisdiction over his Limitation Act complaint, Pennypacker's motion to amend his petition is therefore denied as moot. (ECF No. 39). Likewise, because the court lacks jurisdiction over his Limitation Act complaint, Pennypacker's motion for default judgment against all potential claimants as to that petition is also denied as moot. (ECF No. 22).

**C. The Motion to Intervene Is Granted.**

Finally, the court grants National Liability Fire Insurance Company's motion to intervene. (ECF No. 26). Federal Rule of Civil Procedure 24 permits intervention upon timely application in certain circumstances. National Liability is a subrogated insurance company that has paid for the damages sustained by two boats in connection with the fire on Pennypacker's yacht. (ECF No. 26, ¶ 4). Accordingly, because National Liability's claim, in the very least, "shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(B)(1)(b), and it does not appear that its intervention will unduly delay the case or prejudice the other parties, National Liability is permitted to intervene in this action.

## CONCLUSION

For the foregoing reasons, the motion to dismiss Pennypacker's Limitation Act petition is granted. As to the remaining claims in this case, the court has admiralty jurisdiction over Pennypacker's breach of contract claims against Roger's Marine, and supplemental jurisdiction over the torts arising from the same set of facts. Because Pennypacker's Limitation Act petition is dismissed, his motion to amend the petition and motion for default judgment regarding the petition are denied as moot. Finally, National Liability's motion to intervene is granted.

A separate order follows.

September 8, 2016
Date

J. Frederick Motz
United States District Judge